UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Larry W. Scott, Jr., | ) | C/A No. 5:13-cv-02870-DCN-KDW |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Report and Recommendation |
| Major Jones; Lt. Clawson; Lt. Murant (or | ) | |
| Marant); Ofc. Green; Ofc. Anderson; Ofc. Hopkins; | ) | |
| (or Hodges); Ofc. Jeffcoat, John and Jane Does, and | ) | |
| Dr. Cheri | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff, proceeding pro se, brought this civil rights action pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights. This matter is before the court on Defendant (Doctor) M. Anna Cherry's[1] Motion for Summary Judgment filed on May 21, 2014. ECF No. 87. Additionally, the other named Defendants filed a separate Motion for Summary Judgment on May 23, 2014. ECF No. 93. As Plaintiff is proceeding pro se, the court entered *Roseboro*[2] orders on May 21, 2014, and May 27, 2014, advising Plaintiff of the importance of such motions and of the need for him to file adequate responses. ECF Nos. 88, 94. Plaintiff responded to the Motions for Summary Judgment on June 30, 2014, and August 1, 2014. ECF Nos. 107, 114. Defendants' Motions are now ripe for consideration. This case was referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Civil Rule 73.02(B)(2)(d) and (e), D.S.C. Because this motion is dispositive, a Report and Recommendation is entered for the court's review.

---

[1] Plaintiff identified this Defendant as Dr. Cheri; however, the correct spelling is Cherry.
[2] *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975) (requiring the court provide explanation of dismissal/summary judgment procedures to pro se litigants).

I.      Factual and Procedural Background

Larry W. Scott ("Plaintiff") was a pretrial detainee housed at the Lexington County Detention Center ("LCDC") during the time period relevant to his Complaint. ECF No. 1 at 2. Plaintiff is currently incarcerated within the South Carolina Department of Corrections ("SCDC"). *Id.* Plaintiff filed his Complaint on October 16, 2013, alleging "torture, violation of due process, violation of constitutional rights, civil rights, violation of state and federal laws by employees of LCDC." Plaintiff asserts that a correctional officer, "Rev," called him a snitch and spat in his breakfast tray. *Id.* at 2-3. Additionally, Plaintiff maintains that other prison guards contaminated his lunch tray with blood. *Id.* at 5. Another guard, "the Geek," allegedly opened a letter from Plaintiff to the Lexington County Narcotics Team containing detailed information about drug dealings in the area. *Id.* The Geek then told another inmate about the letter, calling Plaintiff a "tattle tale." *Id.* Officer "Gucci" later told another inmate, "6-9, or Slim," that Plaintiff was a snitch for the feds. *Id.* at 6. Plaintiff also maintains that a SLED agent and another guard told other correctional officers to let inmates know that Plaintiff was snitching. *Id.* at 7.

Plaintiff maintains that on another occasion one of his food trays contained a ball of thread with a piece of metal inside. *Id.* at 6. Plaintiff later contends that Rev violated jail policy by allowing Melvin Williams, an inmate, to approach and threaten Plaintiff for snitching on him. *Id.* at 8-9. Additionally, Plaintiff alleges that Officer Gucci searched his cell because he was a snitch. *Id.* at 9. Another inmate allegedly "punched [Plaintiff] in the face, grabbed [him] by the neck, and started ramming [his] head into a metal door frame, and stated that was for being a snitch." *Id.* at 10. At a disciplinary hearing, Plaintiff maintains that Defendant Clawson locked him up for "14 or 30 days and let the inmate that attacked [him] go without any disciplinary action." *Id.*

Plaintiff alleges that the correctional officers made it impossible for him to eat any food because they stated that his food had been poisoned. *Id.* at 11. After 16 days of being unable to eat, Plaintiff was escorted to medical. *Id.* Even though Plaintiff told medical staff that he was not suicidal, Plaintiff contends that he was placed in "max watch" and "stripped naked, and given a suicide gown, and placed in a single cell with four other inmates." *Id.* at 12. Plaintiff maintains he remained in "max watch" for a period of 60-70 days. *Id.* at 13.

In a Supplemental Pleading attached to his Complaint, Plaintiff repeats many of the factual allegations against Defendants. *See* ECF No. 1-2. Plaintiff maintains that for the role he played in state and federal investigations that Defendants endangered his life, threatened him, harassed him, and punished or tortured him at will. *Id.* at 5. Additionally, Plaintiff contends that he suffered a mental breakdown and was admitted to the South Carolina Department of Mental Health ("DMH") for observation because he was deprived of food for a period exceeding 14 days. *Id.* at 8, 9. Additionally, he maintains that Dr. Cherry, the acting psychiatrist at DMH, prescribed Plaintiff medications that were not "appropriate, important, or necessary," and exposed him to life-threatening side effects. *Id.* at 20. Thereafter, Plaintiff contends that once he was transferred to SCDC another psychiatrist employed by SCDC discontinued him on the medications and indicated they were "inappropriate." *Id.* at 21. Moreover, Plaintiff alleges that the psychotic medication was forcibly administered, and Plaintiff believed that if he did not take the medication as ordered it would be forcibly administered either through injection or by staff holding him down. *Id.* at 22-23.

Plaintiff seeks $250,000 in punitive damages and wants "the responsible people to be held responsible." ECF No. 1 at 15. Additionally, Plaintiff requests $1 million in "nominal relief" which "should be sufficient to protect [himself] and family from the harm and danger that

the guards of [LCDC] placed [him] in." *Id.* Plaintiff asks that "compensatory relief be awarded" if applicable. *Id.*

    II.    Standard of Review

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a Complaint filed by a pro se litigant to allow the development of a potentially meritorious case*, see, e.g.*, *Cruz v. Beto*, 405 U.S. 319, 322 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor

can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990).

III.  Analysis

A.  LCDC Officers' Motion for Summary Judgment

Defendants Jones, Clawson, Murant (or Marant), Green, Anderson, Hopkins (or Hodges), and Jeffcoat contend that they are entitled to summary judgment on Plaintiff's claims because Plaintiff failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA").  ECF No. 93-1 at 7-9.

42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002). To satisfy this requirement, a plaintiff must avail himself of all available administrative remedies. *See Booth v. Churner*, 532 U.S. 731 (2001). Those remedies "need not meet federal standards, nor must they be 'plain, speedy, and effective.'" *Porter,* 534 U.S. at 524 (quoting *Booth*, 532 U.S. at 739). Further, pretrial detainees, which Plaintiff was at all times relevant to these claims, are required to exhaust administrative remedies. *See* 42 U.S.C.A. 1997e(h) (defining "prisoner" for PLRA purposes as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."); *see also Rutland v.*

*Dewitt*, No. 8:09-13-SB, 2010 WL 288217, at *5 & n.1 (D.S.C. Jan. 25, 2010) (applying PLRA to pretrial detainee).

The purpose of the exhaustion requirement is twofold. First, it gives an administrative agency "an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court[.]" *Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (quoting *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992)). Second, "[c]laims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court." *Id.* Any consideration of administrative remedies pursued after the commencement of the litigation would only serve to frustrate both purposes of the PLRA's exhaustion requirement. Satisfaction of the exhaustion requirement requires "using all steps that the agency holds out, and doing so *properly*." *Id.* at 90 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (emphasis in original)). Thus, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007). Defendants have the burden of establishing that a plaintiff failed to exhaust his administrative remedies. *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 681 (4th Cir. 2005).

In support of their Motion for Summary Judgment, Defendants offer the affidavit of Melissa Lyons who is the Prison Rape Elimination Act Coordinator, ICE Supervisor, and Grievance Manager for the LCDC. Lyons Aff. ¶ 2, ECF No. 93-2 at 2. Lyons references and attaches the LCDC grievance procedure to her affidavit. *Id.* ¶ 5. The LCDC grievance procedure clearly sets out the initial grievance filing and appeals process if a grievance is not resolved to an inmate's satisfaction. Ex. A to Lyons Aff., ECF No. 93-3. Lyons attests that "[a]fter a thorough

search of our grievance records" LCDC has no record of any grievances that were filed by Plaintiff. Lyons Aff. ¶ 4.

Defendants therefore contend that Plaintiff's claim should be dismissed because he has not exhausted his administrative remedies. ECF No. 93-1 at 7-9. In his Response in Opposition to Defendants' Motion for Summary Judgment, Plaintiff claims he has "filed multiple grievances as well as multiple verbal complaints." ECF No. 114 at 4. Plaintiff asserts he "made every attempt to exhaust the available means that [were] available to him at the time the [deprivations were] being committed against him by the employees of the [LCDC,]" he filed multiple grievances, and the affidavit of Melissa Lyons is false. *Id.* at 5.

The undersigned has reviewed the evidence before the court and finds that Plaintiff did not exhaust his administrative remedies. LCDC's grievance policy requires a grievance to be filed within "three days after a potentially grievable event has occurred." Ex. A to Lyons Aff., ECF No. 93-3 at 2. Additionally, the policy allows inmates to file appeals and indicates that the appeals "should be filed within 48 hours of the receipt of the Bureau Commander's/Assistant Bureau Commander's response to the inmate." *Id.* at 4. Evidence demonstrates that Plaintiff failed to file initial grievances concerning issues he raised in his Complaint. Though Plaintiff maintains he filed "multiple" grievances, he has failed to cite to any materials supporting this assertion as required by Rule 56(c)(1) of the Federal Rules of Civil Procedure. Plaintiff attached a letter from the Department of Health and Human Services ("DHHS") that responds to his inquiry and concern about "violations within [his] correctional facility and [his] request for an investigation into these matters. . . ." *See* ECF No 114-1 at 1. This response letter is the only indication that Plaintiff sent a written complaint about matters within LCDC to DHHS, but this complaint is not a grievance. Other than this response letter, Plaintiff attached only court

7

documents, portions of his medical records, and jail incident reports as exhibits to his Responses. *See* ECF No. 107-1; 114-1. Unlike grievances that are filed by inmates, jail incident reports are filed by correctional officers and are used to report an inmate's rule violations, altercations with other inmates, and other adverse incidents. Moreover, conclusory statements and bald allegations without any evidentiary support are insufficient to survive summary judgment. *White v. Boyle*, 538 F.2d 1077, 1079 (4th Cir. 1976) (conclusory allegations insufficient to avoid summary judgment).

Therefore, because Plaintiff failed to exhaust his available administrative remedies before filing this action, the undersigned recommends that Defendants Jones, Clawson, Murant (or Marant), Green, Anderson, Hopkins (or Hodges), and Jeffcoat's Motion for Summary Judgment be granted. *See Pozo,* 286 F.3d at 1024 (holding that an inmate's failure to "properly take each step within the administrative process . . . bars, and does not just postpone, suit under § 1983."); *see also Blevins v. Loranth*, No. 09-788-TLW-BM, 2010 WL 670099, at *3 (D.S.C. Feb. 22, 2010), ("Plaintiff needed to file and exhaust his administrative claim [] at FCI Williamsburg prior to proceeding with this lawsuit."); *Kirk v. Kirkland*, No. 0:06-1036 MBS-BM, 2006 WL 3759801 at *2 (D.S.C. Dec. 18, 2006) (finding that "before Plaintiff may proceed with his claim in this Court, he must first have exhausted any administrative remedies that were available at the Detention Center.").

### B. Defendant Cherry's Motion for Summary Judgment[3]

---

[3] The undersigned finds that Defendants Jones, Clawson, Murant (or Marant), Green, Anderson, Hopkins (or Hodges), and Jeffcoat have demonstrated that Plaintiff filed no grievances. Therefore, in the previous section, the undersigned recommends granting these Defendants Summary Judgment based on Plaintiff's failure to exhaust his administrative remedies. However, Defendant Cherry did not raise failure to exhaust as a ground in her Motion. Therefore, the undersigned will address Defendant Cherry's arguments in turn rather than finding Plaintiff failed to exhaust his administrative remedies concerning his cause of action for her alleged indifference to his medical needs. *See* Rule 56(a) of the Federal Rules of Civil

1. Eleventh Amendment Immunity-Official Capacity

Defendant Cherry argues that Plaintiff's § 1983 claims against her are barred pursuant to her Eleventh Amendment Immunity. ECF No. 87-1 at 3. Defendant Cherry maintains that the Eleventh Amendment bars suits against a state by citizens of that state, and this immunity from suit conferred on states extends to suit against state agencies, such as the DMH and its employees. *Id.* at 4. In other words, Defendant argues that a suit against state officials in their official capacities is construed as being against the state itself and is barred by the Eleventh Amendment absent consent to suit or waiver of immunity. *Id.*

In his Response in Opposition to the Motion, Plaintiff maintains that due to her medical training, Dr. Cherry had a duty to provide Plaintiff with treatment consistent with the situation. ECF No. 107 at 8. Moreover, Plaintiff argues that the Eleventh Amendment does not immunize state officials for actions taken in their individual capacities. *Id.* at 9. Thereafter, Plaintiff addresses the merits of his claims and not Defendant's immunity.

The undersigned recommends granting Defendant Cherry's Motion for Summary Judgment because as an employee of the DMH she is entitled to Eleventh Amendment immunity on Plaintiff's cause of action. The Eleventh Amendment forbids a federal court from rendering a judgment against an unconsenting state, a state agency, or a state instrumentality in favor of a citizen of that state. *See Edelman v. Jordan,* 415 U.S. 651, 662-63 (1974). Here, South Carolina has not consented to suit in federal court. *See* S.C. Code Ann. § 15-78-20(e) ("Nothing in this chapter is construed as a waiver of the state's or political subdivision's immunity from suit in federal court under the Eleventh Amendment to the Constitution of the United States nor as consent to be sued in any state court beyond the boundaries of the State of South Carolina."); *see*

---

Procedure requiring the court grant summary judgment "if the *movant* shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." (emphasis added).

*also Stewart v. Beaufort Cnty.*, 481 F. Supp. 2d 483, 493 (D.S.C. 2007) (citing S.C. Code Ann. § 15-78-20(e)) ("The SCTCA, which is the 'exclusive remedy for any tort committed by an employee of a governmental entity,' specifically reserved South Carolina's Eleventh Amendment immunity from suit in federal court."). Therefore, the undersigned recommends granting Defendant's Motion for Summary Judgment because Defendant Cherry is entitled to Eleventh Amendment Immunity in her official capacity.

       2. Deliberate Indifference to Plaintiff's Medical Needs-Individual Capacity

Defendant Cherry concedes that the Eleventh Amendment does not prohibit Plaintiff from suing her in her individual capacity for intentional deprivation of constitutional rights under color of state law. ECF No. 87-1 at 4. However, Defendant Cherry argues that Plaintiff has failed to demonstrate that she was deliberately indifferent to his health or safety as required for Plaintiff to state a § 1983 claim. *Id.* at 5-8. In response, Plaintiff maintains that Dr. Cherry acted with deliberate indifference to Plaintiff's medical needs by placing him on the anti-psychotic medication Zyprexa. ECF No. 107 at 9. Additionally, Plaintiff contends that Dr. Cherry placed him on Depacote without properly evaluating him. *Id.* at 10. Moreover Plaintiff alleges that the records indicate that Dr. Cherry put Plaintiff on certain medications even though Dr. Cherry denies prescribing them. *Id.* at 10-11.

Plaintiff has submitted medical records from January 16, 2013, that indicate Defendant Cherry examined Plaintiff for emergency admission to a mental health facility. ECF No. 107-1 at 10-11. Zyprexa is listed as one of Plaintiff's "current meds" that he was refusing as well as Celexa, Lexapro, and Invega. *Id.* at 11. In Reply, Defendant Cherry maintains that Plaintiff is alleging claims outside of the timeframe he alleged in his "Statement of Claim" which occurred from February 2012 until June/July 2012. *See* ECF No. 108 at 1. Further, Defendant Cherry

indicates that the exhibits Plaintiff references from January of 2013, demonstrate that she involuntarily committed Plaintiff to a mental health facility because she believed Plaintiff posed a substantial risk of harm to himself and others. *Id.* at 2. Without conceding that she prescribed Zyprexa to Plaintiff, Defendant Cherry contends that if she prescribed Zyprexa that she did so to treat Plaintiff's mental illness. *Id.* Defendant Cherry argues that it is her job to diagnose and prescribe medication to Plaintiff, and that at all times his mental health complaints were timely evaluated and properly treated by her and LCDC mental health staff. *Id.* at 2-3.

To prevent the entry of summary judgment on a cause of action for deliberate indifference to medical needs, a plaintiff must present evidence sufficient to create a genuine issue of fact that the defendant was deliberately indifferent to his serious medical need. *Farmer v. Brennan*, 511 U.S. 825, 832-35 (1994); *Wilson v. Seiter,* 501 U.S. 294, 297 (1991); *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). Deliberate indifference to a serious medical need requires proof that each defendant knew of and disregarded the risk posed by the plaintiff's objectively serious medical needs. *Farmer*, 511 U.S. at 846. An assertion of mere negligence or malpractice is not enough to state a constitutional violation, plaintiff must allege and demonstrate "[deliberate indifference] . . . by either actual intent or reckless disregard." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990), *overruled in part on other grounds by Farmer*, 511 U.S. at 837. In other words, a plaintiff must allege facts demonstrating that defendant's actions were "[s]o grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Id*. The Fourth Circuit Court of Appeals defines a serious medical need as "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreye*, 535 F.3d 225, 241 (4th Cir. 2008) (internal citation omitted). A medical condition is also

serious if a delay in treatment causes a lifelong handicap or permanent loss. *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).

The undersigned finds that Plaintiff has not offered any evidence that would support a finding that Defendant Cherry intentionally or recklessly disregarded Plaintiff's medical needs or delayed Plaintiff's access to medical care. Further, the record before the court reveals that Plaintiff had an initial medical and mental health intake screening by LCDC staff. ECF No. 87-2 at 2. Thereafter, on March 6, 2012, LCDC mental health staff evaluated Plaintiff, and Plaintiff had a follow-up visit on March 22, 2012. *Id.* at 2-3. After submitting a health service request, Plaintiff was seen by LCDC mental health staff again on May 4, 2012. *Id.* at 4. On May 16, 2012, Defendant Cherry attended a mental health treatment team meeting and discussed Plaintiff's mental health condition and problems. During this time period, Plaintiff was prescribed Depatoke which he was not required to take and refused to take on several occasions. *Id.* at 5-6.

Here, Plaintiff is arguing that Defendant Cherry violated his rights by prescribing him certain medications. Although Plaintiff may disagree with a diagnosis or believe that a medication is not necessary, such allegations do not constitute a constitutional deprivation. *See Brown v. Thompson*, 868 F. Supp. 326 (S.D. Ga. 1994) (finding that although the provision of medical care by prison officials is not discretionary, the type and amount of medical care is discretionary). Plaintiff maintains that Zyprexa posed a serious risk to his health, and Defendant Cherry "had the ability to draw the necessary inference." ECF No. 107 at 8-9. Though not alleged in his Complaint, in his Response to Summary Judgment Plaintiff maintains that Defendant Cherry prescribed him Depakote without proper evaluation. However, Plaintiff's acknowledgement of Dr. Cherry's treatment, diagnosis, and action in prescribing medication

negates a medical indifference claim and indicates that his claim is more akin to a claim of neglect or malpractice and does not meet the standard for a plausible claim under § 1983. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985). As the *Wright* court articulated:

> Negligence or malpractice in the provision of medical services does not constitute a claim under § 1983. The standard for § 1983 liability is deliberate indifference to serious medical needs. Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged.

*Id.* (internal citations omitted). Here, at best, Plaintiff's claim amounts to medical malpractice and is not a proper § 1983 claim. *See id.* The undersigned finds that the record does not contain facts that demonstrate Defendant Cherry knew of and disregarded Plaintiff's serious medical needs. Rather, the record demonstrates that Defendant Cherry was aware of Plaintiff's mental health conditions, concluded they were life threatening, and committed Plaintiff to a mental health facility. Therefore, the undersigned recommends that Defendant Cherry be granted summary judgment on Plaintiff's medical indifference claim.

### 3. Qualified Immunity

Defendant Cherry contends that even if her conduct is deemed unconstitutional, she is entitled to qualified immunity. ECF No. 87-1 at 8. The Supreme Court, in *Harlow v. Fitzgerald,* established the standard that the court is to follow in determining whether a defendant is protected by this immunity. 457 U.S. 800 (1982). That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow*, 457 U.S. at 818. When evaluating a qualified immunity defense, the court must determine (1) whether the facts alleged, taken in the light most favorable to the plaintiff, show that the defendants' conduct violated a constitutional right, and

13

(2) whether that right was clearly established at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 230-33 (2009). The two prongs of the qualified immunity analysis may be addressed in whatever order is appropriate given the circumstances of the particular case. *Id.* at 236. In determining whether the right violated was clearly established, the court defines the right "in light of the specific context of the case, not as a broad general proposition." *Parrish v. Cleveland*, 372 F.3d 294, 301 (4th Cir. 2004) (internal citation omitted). "If the right was not clearly established in the specific context of the case—that is, if it was not clear to a reasonable officer that the conduct in which he allegedly engaged was unlawful in the situation he confronted—then the law affords immunity from suit." *Id*. at 301-02 (citations and internal quotation omitted).

Plaintiff maintains that Defendant Cherry forcibly placed him on Zyprexa and due process protects citizens against deliberate harm from government officials. ECF No. 107 at 11-12. However, the record before the court shows that Defendant Cherry performed the discretionary function of her respective medical duties, including diagnosing Plaintiff's mental health conditions and prescribing medications to treat those conditions, in an objectively reasonable fashion. Defendant Cherry did not transgress any statutory or constitutional rights of Plaintiff of which she was aware in the exercise of her professional judgment. Thus, if the district judge finds that a constitutional violation occurred, despite recommendations otherwise, the undersigned recommends Defendant Cherry be granted qualified immunity.

IV.     Conclusion and Recommendation

Based on the foregoing, it is recommended that Defendants Jones, Clawson, Murant (or Marant), Green, Anderson, Hopkins (or Hodges), and Jeffcoat's Motion for Summary Judgment, ECF No. 93, and Defendant Cherry's Motion for Summary Judgment, ECF No. 87, be GRANTED.

IT IS SO RECOMMENDED.

September 10, 2014                                               Kaymani D. West
Florence, South Carolina                                         United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**